# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

ALANTEE HULBERT,

    Defendant.

Case No. 1:23-cr-107-5

JUDGE DOUGLAS R. COLE

## OPINION AND ORDER

The Magistrate Judge ordered Defendant Alantee Hulbert detained pending trial in this criminal matter, (Doc. 43), in which Hulbert is indicted for his alleged role in a major drug trafficking conspiracy. More specifically, the Magistrate Judge found, based on the evidence at the detention hearing, that Hulbert both posed a danger to the community and presented a significant flight risk, neither of which could be sufficiently addressed by any condition or set of conditions surrounding his release. Hulbert now brings a Motion for Revocation of Magistrate's Order of Detention and Request for Hearing Thereon (Doc. 93) under 18 U.S.C. § 3145(b), in which he asks the Court to revisit the Magistrate Judge's determination. As Hulbert requested, the Court held a hearing on that motion on May 21, 2024. But, for the reasons detailed below, the Court concludes Hulbert is properly detained pending trial. Accordingly, the Court **GRANTS IN PART** (to the extent he requested a hearing) and **DENIES IN PART** (to the extent he requested release) Hulbert's Motion. (Doc. 93).

## BACKGROUND

On November 1, 2023, the grand jury indicted Hulbert, along with several alleged co-conspirators, on one count of Conspiracy to Distribute and Possession with Intent to Distribute a fentanyl-cocaine mixture in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi), (b)(1)(C), and 846.[1] (Doc. 8, #19–20). An arrest warrant was issued the same day. (Doc. 10). The government represents to the Court that the indictment is the culmination of a long-running Drug Enforcement Agency (DEA) investigation into a Mexican drug trafficking organization (DTO) operating in the Southern District of Ohio and a concurrent Cincinnati Police Department (CPD) investigation into Hulbert based on an anonymous tip suggesting that he had been conducting a cocaine trafficking operation in the Cincinnati area. (Opp'n, Doc. 102, #316–17). According to the government, based on DEA's and CPD's investigation of this DTO, law enforcement concluded that Quinell Hadden, one of Hulbert's co-defendants, was the head of the operations and that Hulbert worked as one of Hadden's top distributors. (*Id.* at #317–18). In addition, law enforcement represents that surveillance revealed Hulbert often visited Hadden's primary stash house, which the government alleges was used for the processing and repackaging of drugs. (*Id.* at #317–19).

Hulbert states that on learning of the indictment, he reached out (via counsel) to the government about the case, as well as about the prospect of his self-surrender.

---

[1] A superseding indictment was later filed that contains multiple counts against various of the defendants. But that superseding indictment preserved the single conspiracy charge against Hulbert, though increasing the quantity of drugs for which Hulbert is allegedly responsible. (Doc. 113, #386–87). Hulbert's initial appearance and arraignment on the superseding indictment was held on April 2, 2024, at which hearing the Magistrate Judge continued his detention pending trial. (4/2/24 Min. Entry).

(Doc. 93, #280). Regarding the latter, the government asked Hulbert to appear on the Friday after Thanksgiving, but he instead turned himself in the following Monday, November 27, 2023. (*Id.* at #280; Doc. 102, #324).

Two days later, the Magistrate Judge held a detention hearing pursuant to 18 U.S.C. § 3142(f). (11/29/23 Min. Entry, Doc. 42). At the hearing, she first found that because Hulbert was charged with violating the Controlled Substances Act, which offense carried a maximum term of imprisonment of 10 years or more, the presumption of detention under 18 U.S.C. § 3142(e)(3)(A) applied. (Doc. 43, #135). She then found, though, that Hulbert successfully rebutted that presumption.[2] (*Id.*). Nonetheless, she ultimately concluded that detention was warranted based on her weighing of various factors. (*Id.*). In particular, she pointed to (1) the length of detention were Hulbert convicted, (2) his lack of stable employment or residence, (3) his criminal history, and (4) the weight of the evidence regarding his dangerousness or risk of flight (e.g., as to the latter, his experience creating fake identification documents), which taken in conjunction, she found showed he posed both a risk of non-appearance and a danger to the community. (*Id.* at #135–36).

On March 26, 2024, Hulbert moved for revocation of the Magistrate Judge's order of detention and requested a hearing on the motion. (Doc. 93). According to Hulbert, the government's case for detention relied "primarily" on his alleged access to cash and fake identification documents. (*Id.* at #281). Hulbert suggests that the

---

[2] At the hearing on this Motion, Hulbert's counsel stated that it was not clear to her at the detention hearing whether the Magistrate Judge concluded that Hulbert had rebutted the presumption or not. But the Order of Detention Pending Trial plainly reveals that the Magistrate Judge had found that he had done so. (Doc. 43, #135).

first fails because the government lacks a sufficient evidentiary foundation to show that Hulbert had access to large amounts of cash. (*Id.* at #283–85). And Hulbert contends the second argument lacks merit because the government's search of the stash house turned up no evidence of fake identification documents. (*Id.* at #285–86). Hulbert then contends that he is not a flight risk because he ultimately turned himself in—impliedly suggesting he would not use any fake identification documents even if he had access to them. (*Id.* at #286). As for dangerousness, Hulbert contends that the only suggestion that he might pose any danger to the community arises from his alleged association with the conduct charged in this case. (*Id.* at #283). But he contends that even his alleged involvement in the conspiracy here does not support such a finding because (1) the evidence of his involvement is weak; (2) even if he were involved, there is no allegation that he was associated with firearms; (3) the available evidence suggests the duration of his involvement, if any, was far shorter than his co-conspirators; and (4) relatedly, the quantities of controlled substances potentially attributable to him are small. (*Id.* at #283, 287–88). Finally, he argues that because he has (1) some ties to the area, and (2) what he believes is a minimal criminal history, the asserted lack of evidence directly tying him to all the drugs involved in this conspiracy means that when the Court weighs all relevant factors, it should find that release is proper. (*Id.* at #286–88).

The government opposed his motion. It challenges both the Magistrate Judge's determination that Hulbert had rebutted the presumption of detention and his characterization of the evidence. (Doc. 102, #328–30). After obtaining an extension of

4

time, Hulbert thereafter replied on April 16, 2024. (Doc. 107). The Court held the requested hearing on Hulbert's motion on May 21, 2024. Only the government tendered evidence, in the form of three exhibits showing various false identification documents Hulbert allegedly created, (Ex. A), and the contents of various text message exchanges between Hulbert and others (Exs. B–C). But both sides offered extensive argument on the motion. (5/21/24 Min. Entry). With that, the motion is ripe.

## LAW AND ANALYSIS

When a magistrate judge orders a defendant detained pending trial under § 3142(e) as a flight risk or danger to the community and the defendant challenges that determination before the district court, the "district court reviews the magistrate judge's decision de novo." *United States v. Roberson*, No. 1:21-cr-127, 2022 WL 2980530, at *2 (S.D. Ohio July 28, 2022) (cleaned up) (collecting cases). As part of this review, the Court considers the entire record, including the Pretrial Services Report, the original detention hearing, all briefings filed in the matter, and any evidence the parties tender at the hearing. *United States v. Carter*, No. 1:20-cr-62-1, 2021 WL 687858, at *2 (S.D. Ohio Feb. 23, 2021).

In conducting that review, the "default position of the law" is that "a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). At the same time, the Court must balance the law's concern for the liberty of a potentially innocent defendant with the need to protect the community and to preserve the integrity of judicial proceedings. So if there is no condition or combination of conditions that will both (1) "reasonably assure the appearance of" the

5

defendant at future proceedings (the risk-of-flight factor), and (2) reasonably assure "the safety of any other person or the community" (the dangerousness factor), a court must deny pretrial bond. 18 U.S.C. § 3142(e). When evaluating these issues, the Court considers (1) "the nature and circumstances of the offense"; (2) "the weight of the evidence against the defendant"; (3) "the history and characteristics of the defendant"; and (4) "the nature and seriousness of the danger to any person of the community that would be posed by the defendant's release." *United States v. Parish*, No. 1:21-cr-127-14, 2022 WL 3654892, at *4 (S.D. Ohio Aug. 25, 2022) (citing 18 U.S.C. § 3142(g)).

Beyond that, while release pending trial is the default, there are also times when presumptions come into play in the detention analysis. Of particular relevance here, a rebuttable presumption arises as to both factors listed above (risk of flight and dangerousness) if the judicial officer finds that "there is probable cause to believe that the person committed" one of several listed offenses. 18 U.S.C. § 3142(e)(3). Both the indictment and superseding indictment charged Hulbert with one such offense— "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." *Id.* § 3142(e)(3)(A). And the grand jury's return of those indictments establishes that probable cause exists that Hulbert committed the charged offense. *See Stone*, 608 F.3d at 945. Thus, the Court finds (and the parties do not dispute) that a presumption in favor of pretrial detention applies.

Because there is a presumption of detention, two issues arise: (1) whether Hulbert has rebutted that presumption, and (2) if so, whether pretrial detention is

6

nonetheless warranted here. As further discussed below, however, the Court declines to reach the first issue. Rather, the Court will assume that Hulbert has rebutted the presumption and thus proceed with balancing the statutory factors. Applying those factors here, the Court concludes that Hulbert should remain detained pending trial.

**A.    The Court Declines to Decide Whether Hulbert Has Rebutted the Presumption.**

As noted, after the presumption of detention is established, the next step is to assess whether the presumption has been rebutted. But the Court declines to reach this question. This is because doing so would require the Court to resolve thorny issues that do not ultimately change the outcome on pre-trial detention considering the Court's finding that pre-trial detention of Hulbert is warranted when the statutory factors are balanced. *See infra* Part B.

To illustrate why resolving the presumption issue is difficult: It is well settled that (1) to rebut the presumption, the defendant must present affirmative evidence that he both poses no danger to the community *and* no risk of non-appearance, and (2) that this burden "is not heavy." *Stone*, 608 F.3d at 945. But what is less clear is exactly what constitutes affirmative evidence. Here, for instance, Hubert points to the allegedly tenuous evidence of his involvement in the offense conduct—offense conduct that the government cites as evidence of dangerousness. But is evidence that merely calls into question the strength of the government's evidence of guilt (which courts would typically refer to as impeachment evidence) *affirmative* evidence of non-dangerousness for detention purposes? *See United States v. Moore*, No. 2:09-cr-222-41, 2010 WL 1006205, at *4 (S.D. W. Va. Mar. 16, 2010) (concluding that merely

7

impeaching the government's case does not constitute affirmative evidence of a lack of dangerousness); *cf. United States v. Beard*, 528 F. Supp. 3d 764, 772 (N.D. Ohio 2021) (concluding that the presumption was rebutted by the defendant's lack of violent past and the fact that the narcotics charges were based on allegations that the defendant engaged in non-violent controlled buys). Similarly, while the bar is "low," little caselaw directly addresses the quantum of evidence actually needed to clear it. *Cf. United States v. Gourley*, 936 F. Supp. 412, 416 (S.D. Tex. 1996) (finding the presumption rebutted when defendants cross-examined the government's witness and proffered witnesses of their own). Rather, so long as the defendant produces *any* evidence, courts tend to assume the defendant has met his burden of production, and then proceed to the balancing question. *See, e.g.*, *United States v. Whigham*, No. 22-5444, 2022 U.S. App. LEXIS 19148, at *2 (6th Cir. July 12, 2022).

Given the difficult issues that surround the question whether Hulbert has overcome the presumption in this case, the Court concludes the path identified in *Whigam* makes sense. Accordingly, the Court will assume that Hulbert has met his burden of production, such that the presumption of detention does not compel detention (but as explained below, that the presumption was warranted here still plays a role in the Court's balancing of the statutory factors set forth in § 3142(g)).

**B.      Balancing the Statutory Factors, the Court Concludes Pre-Trial Detention Is Warranted.**

When a defendant meets (or is treated as meeting) the burden of production, the burden of persuasion then falls on the government to substantiate the need for detention. That is, the government must show that no conditions or combinations of

8

conditions would suffice reasonably to assure one or both of (1) his appearance, or (2) the safety of the community were he released, 18 U.S.C. § 3142(e)—the latter of which must be shown by clear and convincing evidence, *id.* § 3142(f)(2).[3] In making that assessment, the Court relies on the four statutory factors noted above. *See id.* § 3142(g). Take each factor in turn.

1. **Nature and Circumstances of the Alleged Offense**

All agree that the nature and circumstance of the alleged offense weighs heavily in favor of detention. (Doc. 93, #282; Doc. 102, #328–29). Indeed, as already discussed, the alleged offense here gave rise to a rebuttable presumption of detention. And even when a defendant rebuts the presumption, the Court can still consider the existence of the presumption in the first instance as part of the weighing analysis. *Stone*, 608 F.3d. at 945; *United States v. Lattner*, 23 F. App'x 363, 364 (6th Cir. 2001) ("The court may continue to give the presumption some weight by keeping in mind that Congress has determined that drug offenders pose a special risk of flight and dangerousness to society." (cleaned up)). Thus, perhaps not surprisingly, at the hearing, Hulbert's counsel conceded that the nature of the alleged offense favored detention. To be sure, she argued that the evidence that Hulbert actually *committed* the offense was weak. But she acknowledged that the offense itself is one that would

---

[3] There is a split in authority as to whether the risk of non-appearance prong must be proven by clear and convincing evidence or only by the preponderance of the evidence. *Compare United States v. Sanders*, 466 F. Supp. 3d 779, 784 (E.D. Mich. 2020) (clear and convincing evidence), *with United States v. Curry*, No. 6:06-cr-82, 2006 WL 2037406, at *6 (E.D. Ky. July 18, 2006) (preponderance of the evidence), *and United States v. Jackson*, 823 F.2d 4, 5 (2d Cir. 1987) (same). The Court does not wade into this dispute, as it concludes that even under the more stringent clear-and-convincing standard, the government has satisfied its burden of persuasion showing that pretrial-detention is warranted here.

cut in favor of pretrial detention. And given the well-established caselaw on the topic, *see Stone*, 608 F.3d at 947 n.6 (collecting cases finding that drug trafficking charges are the kinds of offenses that justify detention under the first prong of the § 3142(g) analysis), it would have been impossible to argue otherwise. So this first prong of the analysis strongly supports detention pending trial.

### 2. Weight of Evidence

What about the weight of the evidence as to Hulbert's risk of dangerousness to others and his risk of flight? The government has met its burden of persuasion here.

As to the former, the Court begins by observing that the weight-of-the-evidence factor turns on evidence of *dangerousness*, not evidence of guilt. *Stone*, 608 F.3d at 948. But here, as Hulbert concedes (*see* Doc. 93, #283), the two collapse at least to some extent, as the government relies on the alleged offense conduct as one aspect of showing dangerousness. In that circumstance, the evidence (or lack of evidence) that he actually committed this particular offense thus also weighs in the dangerousness calculus. On that front, recall that Hulbert is alleged to have participated in a substantial narcotics conspiracy in the Cincinnati area and frequently to have been present at a large stash house where the DTO moved these drugs. Though the specific amounts recovered from that location were less than the overall charged conduct, the evidence tends to support the government's position that this stash house served as the home base for moving significant quantities of drugs over a long period of time. Surveillance of the location and attendant hand-to-hand transactions combined with the empty bags with drug residue found at the location (suggesting that significant

10

amounts of drugs were dumped before the search warrant was executed) tends to prove that large quantities of narcotics had been at that location. And the evidence also confirms that Hulbert was present in the house on numerous occasions.

Again, Hulbert does not meaningfully dispute either of these points. (*See* Doc. 107, #371–72). Rather, he seeks to dispute any inference that his frequent presence in a house known to hold large quantities of drugs means that he knew about the drugs or was involved in a drug distribution conspiracy. (*See id.* at #372–73). But the question here is not whether the government will be able to prove beyond a reasonable doubt that he committed the offense, but rather merely whether the evidence of his conduct meets the government's burden of persuasion on the dangerousness factor for purposes of pre-trial detention. *Stone*, 608 F.3d at 948. As to the latter question, the Court concludes the answer is yes. Drugs are dangerous to the community. *Id.* at 947 n.6. And evidence that a person was routinely present where large quantities of drugs are stored permits the Court reasonably to infer that Hulbert had at least some non-negligible level of complicity in, even if not necessarily culpability for, that dangerous conduct. Indeed, further buttressing a finding of complicity is evidence suggesting that Hulbert also had access to large quantities of cash in furtherance of the conspiracy—specifically, a text exchange between Hulbert and Hadden showing what law enforcement officers concluded was around $900,000 in bills.[4] (Doc. 93, #284–85). And that evidence of Hulbert's complicity in this

---

[4] Hulbert's briefing tries to contest the importance of this photograph by pointing to a selected excerpt of the metadata related to the photo. (Doc. 93, #285). There are two problems with Hulbert's argument. To the extent that Hulbert suggests the government did not show he

11

admittedly dangerous conduct—evidence that tends to show he played a substantial role in this DTO—reflects his dangerousness to the community.

Beyond evidence of dangerousness arising from the offense conduct, the Court also notes Hulbert's prior drug conviction, gambling problems, and lack of a stable employment history, all support a finding that he has a proclivity for operating outside the bounds of the law and therefore would pose a risk to the safety of the community were he released. *Stone*, 608 F.3d at 947 n.6 (collecting cases repeatedly finding that "pre-trial detention of run-of-the-mill drug dealers" was proper "even without *any indication* that the defendant has engaged in violence" (emphasis added)); *see United States v. White*, No. 1:20-cr-159-1, 2021 WL 1158141, at *3 (S.D. Ohio Mar. 26, 2021) (explaining that even if crimes "may not be violent offenses per se, they [can] carry a significant potential for violence").

Separately, not only does this evidence weigh in support of a finding of dangerousness, but there is also evidence suggesting Hulbert poses a risk of non-

---

had large access to cash in April 2023 because the metadata reveals the photograph was taken in September 2020, Hulbert has (inadvertently) demonstrated the need for detention. Contrary to Hulbert's suggestion in his briefing that he was minimal player in the conspiracy, if he had access to nearly one million dollars in cash as early as September 2020, he appears to have been directly involved in the operations of this DTO for more than three years, which high-level involvement underscores the risk to the community were Hulbert released pending trial. (*See* Doc. 102, #319 n.2). Further, as the government notes, (*id.*), the metadata on the photo does not definitively prove the photo was not created in April 2023 as law enforcement represented in its search warrant affidavit, (Doc. 93, #285). So there is just as strong an argument that Hulbert had direct access to nearly one million dollars in cash as late as April 2023 equally supporting the inference that he was actively and intimately involved at the highest level of this DTO. Regardless which way we look at the evidence, the result is the same: Hulbert is both directly implicated in a large DTO and a high-level player, who was present at a stash house where large quantities of narcotics were housed and moved. This evidence is both competent and highly probative of Hulbert's dangerousness to the community, thereby favoring detention.

appearance. As the government highlights, Hulbert, in text exchanges with Hadden, appears responsible for creating fake identification documents for individuals involved in the DTO. (Doc. 102, #325; Doc. 102-1, #350–53). At the hearing, the government provided examples of the fraudulent identification documents that Hulbert had created. (Ex. A). Nor is this a one-off—Hulbert has a history of repeatedly being found guilty of fraud and identity theft charges. (Doc. 41, #130–31). That, coupled with a picture suggesting that he may have access to the proceeds of the alleged drug conspiracy—i.e., large amounts of cash—bolsters a finding that were Hulbert released he would have the means and ability to skip town. And exposure to a potential term of imprisonment of the length at issue here would almost certainly provide strong motive to Hulbert to take advantage of those means.

Hulbert's arguments to the contrary are unpersuasive. Hulbert relies heavily on the fact that he turned himself in and that the government never recovered fake identification documents in its search of the relevant locations, (Doc. 93, #286; Doc. 107, #374). But that does not undermine the other evidence tending to show that Hulbert is at risk of non-appearance. True, the government appears not to have found specific documents with Hulbert's identifying information, but that does not mean that they do not exist. Indeed, at the hearing, the government provided an example. (Ex. A). And yes, he was at two international airports (Las Vegas and Detroit) after learning of the indictment and nonetheless voluntarily surrendered to authorities. But it is difficult to give that too much credence. Perhaps he did not have any fake identification documents with him, or did not have large sums of cash in his

13

possession, such that he was not prepared to flee. That tells us little about how he may react given the opportunity to do so now. In other words, Hulbert's evidence, whether considered alone or in combination, does not suffice to overcome the government's showing that he is a flight risk.

To put it more broadly, Hulbert's history of engaging in fraud, (Doc. 41, #130–31), his direct involvement in creating fraudulent documents in connection with this conspiracy, (Doc. 102, #325; Doc. 102-1, #350–53), his minimal employment history and lack of stable housing, (Doc. 41, #131), when placed against the backdrop of the sentence he is facing if found guilty, 18 U.S.C. § 3142(e)(3)(A), reveal that no set of conditions would reasonably assure his appearance. *See United States v. Amar*, 300 F. Supp. 3d 287, 289 (D.D.C. 2018) (concluding that a defendant's involvement in a large conspiracy carrying significant penalties combined with his personal experience engaging in fraud supported a finding that he had the means and motive to flee from prosecution were he released pending trial); *see also United States v. Bothra*, No. 19-1092, 2019 WL 8883547, at *2 (6th Cir. Mar. 28, 2019) (holding that the district court clearly erred in finding that the weight of evidence did not support pretrial detention because even with a defendant's family connections to the district, his fraudulent behavior sufficed to show he posed a risk of flight). So while it is admirable that Hulbert surrendered and although he has *some* connection to the Cincinnati area, (Doc. 93, #285–86; Doc. 102, #324), the rest of the record strongly supports the need for Hulbert's detention pending trial, as he poses a significant risk of flight.

14

Simply, the weight of the evidence clearly and convincingly reveals that Hulbert is both a danger to the community and at risk of non-appearance. This prong thus weighs in favor of detention.

### 3. History and Characteristics of Hulbert

Next up is the factor asking the Court to assess Hulbert's history and characteristics. As the scattered details above suggest, there are aspects of Hulbert's history and characteristics that point in different directions. That Hulbert has relatives in the area makes it less likely he would evade his responsibility to appear, as does his decision eventually to turn himself into the authorities. (Doc. 93, #286). And it is likewise true that, while Hulbert has some prior criminal convictions—mostly involving fraud and theft charges with one drug charge—it would be hard to categorize his criminal history as extensive.[5] (Doc. 41, #130–31). But at the same time, the Court cannot ignore other concerning details in Hulbert's past. Even without an extensive criminal background, his convictions for identify fraud and forgery, along with his minimal employment history, his prior drug conviction, and his overall lack of residential stability (even given his family connections to the area) undercut the weight of the factors that might otherwise support releasing Hulbert pending trial. *Cf. Carter*, 2021 WL 687858, at *4 ("After reviewing Carter's profile outlined in the Pretrial Services Report, the Court finds that his lack of employment, previous criminal history, and issues with substance abuse all cut in favor of pretrial

---

[5] The Court agrees with Hulbert, (Doc. 107, #374–75), that the government overplays its hand when arguing about his criminal history, (*see* Doc. 102, #329). It is inappropriate to highlight arrests that resulted in a dismissal or noelle prosequi as a basis for concluding that Hulbert has an extensive criminal history given those charges did not result in a conviction.

15

detention[.]"). So while this factor does not point strongly in either direction, the Court finds, considering the record as a whole, that it weighs slightly in favor of detention.

### 4. Nature and Seriousness of the Danger to the Community

That leaves the last prong: the evidence showing the nature and seriousness of the danger to the community created by Hulbert's release. The Court need not reiterate all portions of the record weighing on this prong, as it would largely be duplicative. The crime charged is serious enough, especially given the alleged extent of his involvement in the conspiracy, that the Court has no difficulty, under binding caselaw, finding that Hulbert poses a significant danger to the community. *Whigham*, 2022 U.S. App. LEXIS 19148, at *5. This factor favors detention. Hulbert acknowledges as much. But he again tries to contest whether the government will ultimately prove at trial that he is responsible for the entire quantity of drugs allegedly involved in this conspiracy. (Doc. 93, #287–88). But as noted above, the Court remains unconvinced by Hulbert's downplaying of his role in this conspiracy. *See supra* Part B.2, note 4. And even if Hulbert is correct that he will not be found responsible for all the drugs in this conspiracy, caselaw still supports a finding that he poses a danger, as "[d]rug trafficking is a serious offense that, in itself, poses a danger to the community." *Stone*, 608 F.3d at 947 n.6. Simply, Hulbert has not identified specific aspects of his case that removes him from the class of drug trafficking defendants who are both presumed, 18 U.S.C. § 3142(e)(3)(A), and have

16

consistently been found, *Stone*, 608 F.3d at 947 n.6 (collecting cases), to be dangers to the community. Hence, this last prong also favors detention.

* * *

Altogether, Hulbert's detention is warranted even assuming he has rebutted the statutory presumption. The nature of the charged conduct, the weight of the evidence, Hulbert's history and characteristics, and the seriousness of the danger to the community all (to varying degrees) support detention. In other words, when the Court takes Hulbert's alleged significant involvement in this large drug conspiracy (supported by evidence in the record) and his personal experience creating fraudulent identification documents together with his other characteristics—characteristics that at best only marginally support his case for release and at worst underscore that he poses a danger to others and is likely not to appear—it finds there are no conditions of release "that [would] reasonably assure the appearance of [Hulbert] as required and the safety of any other person and the community." 18 U.S.C. § 3142(g).

## CONCLUSION

For the reasons explained, the Court **GRANTS IN PART** (to the extent Hulbert requested a hearing) and **DENIES IN PART** (to the extent he requested release) his Motion for Revocation of Magistrate's Order of Detention and Request for Hearing Thereon (Doc. 93).

**SO ORDERED.**

May 29, 2024
 **DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

17